Weygandt, C. J.
 

 The decisive question presented by the demurrers is the nature of the provisions of Amended Substitute Senate Bill No. 175 passed by the 90th General Assembly March 30, 1933.
 

 The act is entitled: “To limit the borrowing of money by boards of education, and to provide for the funding of existing indebtedness, and to declare an emergency.” Section 3 of the act reads as follows:
 

 “Upon receiving the certificate of net floating indebtedness from the auditor of state each board of education having any such indebtedness in excess of four hundred dollars may proceed to issue the bonds of the school district in the total sum of said indebtedness, which bonds shall be outside of all limitations as to the amount of net indebtedness which may be incurred. Such bonds shall be full general obligations of the school district and shall mature in not more than
 
 *338
 
 sixteen substantially equal semi-annual installments, tbe first maturity to be six months after the date of issue. Such bonds shall bear interest at a rate not to exceed six per cent per annum, and shall be issued or sold in the manner provided by law. The proceeds thereof shall be applied immediately to the payment of existing indebtedness or .shall be held for the retirement of notes falling due prior to October 1, 1933. At the time of the authorization of such bonds, the board of education shall provide for a levy of taxes for the payment of the interest and principal thereof. In the authorization and issuance of bonds under this act the provisions of the uniform bond act shall apply except as herein otherwise provided.”
 

 It is the contention of the respondents that the authority conferred by this section is discretionary and directory. The relators, on the other hand, insist that the word “may” in the first sentence is required to be construed as ‘ ‘ must ” or “ shall. ’ ’ Under this latter construction the sentence would read: “Upon receiving the certificate of net floating indebtedness from the auditor of state each board of education having any such indebtedness in excess of four hundred dollars
 
 must
 
 (or shall) proceed to issue the bonds * * *.” The relators contend that this construction isi required both by the context of the act and by the judicial construction heretofore placed by the courts upon the word “may.” They urge that, inasmuch as the word “may” appears in .Section 3 but once, while the word “shall” is used nine times, manifestly the Legislature must have intended to use “shall” throughout the section in order to provide uniformity in its six sentences.
 

 In order to arrive at the probable intention of the Legislature, it should be helpful to keep in mind the fundamental rule that ordinarily the words “may” and “shall” or “must” are not used interchangeably or synonymously. When such use is employed, the.
 
 *339
 
 intention so to do must clearly appear. Webster’s Dictionary gives the following simple but accurate statement of the rule: “Where the sense, purpose, or policy of a statute requires it,
 
 may
 
 as used in the statute will be construed as
 
 must
 
 or
 
 shall;
 
 otherwise
 
 may
 
 has its ordinary permissive and discretionary force.”
 

 In Bouvier appear these statements: “In interpreting statutes the word
 
 may
 
 should be construed as equivalent to
 
 shall
 
 or
 
 must
 
 in cases where the sense of the entire enactment requires it; *
 
 *
 
 * Where there is nothing in the connection of the language or in the sense and policy of the provision to require an unusual interpretation, its use is merely permissive and discretionary.” 2 Bouv. Law Diet., 2168.
 

 The following statement of the rule appears in 25 Ruling Case Law, 767:
 

 ‘ ‘ There is no universal rule by which directory provisions in a statute may, in all circumstances, be distinguished from those which are mandatory. In the determination of this question, as of every other question of statutory construction, the prime object is to ascertain the legislative intention as disclosed by all the terms and provisions of the act in relation to the subject of legislation and the general object intended to be accomplished. * * *
 

 “Whether the language of a statute is imperative or merely permissive depends on the intention as disclosed in the nature of the act and in the context. Although the words of a statute are merely permissive, directory, or enabling, they may nevertheless have the force of words of command where the power or duty to which they relate is for the advancement of public justice or the security and protection of public or private rights. Thus, the words ‘may,’ ‘shall be lawful,’ and the like, frequently are to be construed as ‘shall’ or ‘must’ where the rights of the public or of third persons depend on the exercise of the power, or performance of the duty, to which the statute refers, or where
 
 *340
 
 the construction is necessary to give effect to the clear intention of the legislature, or if a contrary construction would render the statute obnoxious to some constitutional inhibition; but such a liberty can be taken with the plain words of a statute only where it is necessary to give effect to the clear policy and intention of the Legislature.”
 

 In the instant case, is it reasonably probable that the Legislature has peremptorily ordered every board of education to issue bonds whenever it has an indebtedness in the slightest amount in excess of four hundred dollars? That may seem to be an extreme statement of the question, but, if the statute is mandatory as to large amounts in excéss of four hundred dollars, obviously it is equally so as to small amounts in excess of that figure, because the simple, inflexible language of the provision is “indebtedness in excess of four hundred dollars.” One commonly applied test in the construction of a statute is the practicability of its operation. Can it logically be said that a board of education with an indebtedness of four hundred and one dollars should be compelled to issue bonds although it may be expecting soon to receive from other sources a much greater amount adequate for all its needs?
 

 It is, of course, true that in Section 3 the word “shall” appears in nine places while the word “may” is used but once. However, there seems to be nothing in the context to indicate that the Legislature did not have in mind the generally accepted sense in which the two words are ordinarily employed. This view finds substantiation in the fact that “may” is used in the first and only phrase relating to the decision of the board of education to proceed with the issuance of bonds, while “shall” is thereafter consistently employed throughout with reference to the various steps to be taken
 
 after
 
 it has been determined that bonds should be issued. ■
 

 The Court is unanimously of the opinion that this
 
 *341
 
 case presents no situation in which authority is conferred to perform an act which the public interest demands. Rather, the act authorized is one resting in the sound discretion of each board of education after its financial condition has been carefully and accurately determined.
 

 In view of the foregoing, the demurrer to each of the three petitions must be sustained and the actions dismissed at the cost of the relators.
 

 Demurrers sustained.
 

 Allen, Stephenson, Jones, Matthias, Bevis and Zimmerman, JJ., concur.