[Cite as *Wood v. Simmers*, 2019-Ohio-4440.]

# IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Donald E. Wood, | : | |
| Appellant-Appellant, | : | |
| | : | No. 19AP-275 |
| v. | : | (C.P.C. No. 18CV-9845) |
| Richard J. Simmers, Chief, Ohio Division of Oil & Gas Resources Management, | : | (ACCELERATED CALENDAR) |
| | : | |
| Appellee-Appellee. | : | |

# D E C I S I O N

**Rendered on October 29, 2019**

**On brief:** *Donald E. Wood,* pro se. **Argued:** *Donald E. Wood.*

**On brief:** *Dave Yost,* Attorney General, *Gene D. Park,* and *Jacquelyn Fisher,* for appellee. **Argued:** *Gene D. Park.*

APPEAL from the Franklin County Court of Common Pleas

NELSON, J.

{¶ 1} We find this a straightforward case because even in the unlikely circumstance that "may" in the relevant statutory section could be read properly to mean "shall," the use of the word "will" in a related administrative code provision could not sensibly mean "will (or shall, or may) *not.*"

{¶ 2} Donald E. Wood, a lawyer as well as an owner/operator of 16 oil and gas wells in Ohio, wants to mount an argument that in the context of the particular regulatory scheme requiring well owners to provide a surety bond or cash deposit to ensure compliance with land restoration and related environmental rules, *see* R.C. 1509.07(B)(1) and (2), the statutory grant of authority to the chief of the department of natural resource's division of oil and gas management to accept a net financial worth statement in lieu of such bond or cash deposit ("[i]nstead of a surety bond, the chief may accept proof of financial

responsibility consisting of a sworn financial statement showing a net financial worth within this state equal to twice the amount of the bond for which it substitutes * * *"), R.C. 1509.07(B)(3), creates a mandatory obligation for the chief to accept such a financial statement and precludes the chief from requiring a bond or cash.  Here, "may" means "shall," Mr. Wood submits:  "use of the word 'may' in the statute does not give the [chief] discretion to reject financial statements as proof of financial responsibility."  Appellant's Brief at 18.

{¶ 3}   But apart from the dubious merits of Mr. Wood's rejection of any distinction here between "may" and "shall" (even in a statutory section that uses "shall" in some contexts and "may" in others, *compare, e.g.,* R.C. 1509.07(A)(1) ("an owner of any well * * * shall obtain liability insurance coverage"); (A)(2) ("shall obtain" coverage that "shall include" coverage available for an environmental endorsement); (A)(3) ("shall maintain" and "shall provide" proof of coverage until wells plugged); and (B)(1) (except as otherwise provided, owner "shall execute and file" surety bond conditioned on compliance with restoration and plugging requirements), *with* (B)(2) (owner "may deposit with the chief, instead of a surety bond, cash in an amount equal to the surety bond * * * or negotiable certificates of deposit or irrevocable letters of credit," and chief "shall deliver them to the secretary of state"); (B)(3) ("[i]nstead of a surety bond, the chief may accept" a sworn financial statement meeting certain specifications)), Mr. Wood fails to contend adequately with the question of what happens when a well owner does *not* timely submit an annual financial statement, even when reminded to do so and given additional time.

{¶ 4}   As it happens, Ohio has an administrative code provision for that. Ohio Admin.Code 1501:9-1-03(F) relates to sworn financial statements that "may be accepted in lieu of a surety bond, [etc.]" for non-domestic well owners (like Mr. Wood) "for whom the chief has accepted a sworn financial statement prior to January 1, 1993."  Each such owner "shall demonstrate financial responsibility annually" on a schedule established by the division of oil and gas management. Ohio Admin.Code 1501:9-1-03(F)(2)(a). And the "[f]ailure of an owner to demonstrate financial responsibility as required" under that regulatory subsection "*will* result in an order by the chief requiring a surety bond, certificate of deposit, or cash bond in the amount of bond required.  If the order is not complied with, the owner will receive an order by the chief requiring the plugging of all wells of the owner." Ohio Admin.Code 1501:9-1-03(F)(2)(f)(i) (emphasis added).

{¶ 5}   Because that is what happened here—that is, because Mr. Wood, who previously had been permitted to file financial statements, did not file his annual statement of financial responsibility as due in 2014—even after the division prompted him to do so and accorded him additional months to make such a filing—the chief issued an order requiring him to provide a surety bond, certificate of deposit, or cash bond in the amount of bond required, or to plug his wells or transfer them to an owner who would comply with Ohio's environmental regulations in this regard.

{¶ 6}   Mr. Wood appealed that order to Ohio's Oil and Gas commission, which affirmed it, and he then appealed that determination to the court of common pleas pursuant to R.C. 1509.37.   The common pleas court upheld the commission order as lawful and reasonable, and Mr. Wood now has turned to us.   We will affirm the judgment of the common pleas court, which did not abuse its discretion in finding that the commission acted in accordance with law based on the facts.   "When the financial statement is not submitted, Ohio Admin.Code 1501:9-1-03(F)2)(f)(i) authorizes [indeed, we would say it requires] the order requiring the filing of a surety bond, certificate of deposit, or cash bond." April 11, 2019 Decision and Judgment Entry Affirming the Order of the Ohio Oil & Gas Commission, at 6; *see also id.* at 9.

{¶ 7}   The decision of the common pleas court describes this matter in some detail; we provide a thumbnail sketch, and need not rehearse here the only tangentially related, ill-fated efforts by Mr. Wood to have the commission certify a class as discussed in *Wood v. Simmers*, 10th Dist. No. 17AP-269, 2017-Ohio-8718 ("*Wood I*"), or to overturn the chief's order through a declaratory judgment action filed in and then appropriately dismissed by the court of claims, *see Wood v. Div. of Oil & Gas Resources Mgt.*, 10th Dist. No. 18AP-470, 2018-Ohio-4968 ("*Wood II*").

{¶ 8}   The uncontested record reflects that Mr. Wood, in lieu of a surety bond, submitted sworn financial statements in somewhat desultory fashion between 1986 and 2013. "Mr. Wood did not file or update his financial statements on a yearly basis.  Rather, it appears that Mr. Wood usually updated his statements only when prompted by the Division." October 29, 2018 Findings, Conclusions & Order of the Commission at 5. Although he filed such a statement on November 21, 2013, he did not file in 2014.   "In January of 2015, the Division mailed to Mr. Wood a letter reminding him of his annual obligation to file or update his financial statement.  This letter gave Mr. Wood 60 days to

file an updated financial statement or to request an extension of this deadline." *Id.* at 2. "Mr. Wood did not file an updated financial statement during the approximately six-month period after he was notified in January 2015 of his obligation to submit an updated financial statement." *Id.* at 3; *see also* Decision and Judgment Entry at 1 ("Mr. Wood did not submit a financial statement within 60 days [of the January 2015 letter] or request an extension of time").

{¶ 9}   Consequently, on July 7, 2015, Richard Simmers, chief of the department's division of oil and gas resources management, issued an order directing that within 30 days Mr. Wood "[e]xecute and file a surety bond, certificate of deposit, irrevocable letter of credit, cash or cashier's check with the Division, as required by R.C. 1509.07(B)," or plug and abandon his wells or transfer them to another owner.  July 7, 2015, Chief's Order at 2. It was not until after the chief's order issued that, on or about July 17, 2015, Mr. Wood submitted an updated financial statement; the division did not accept that submission because it was untimely and "not a compliance option under [the] outstanding Chief's Order."  October 29, 2018, Commission Findings at 3.

{¶ 10} Mr. Wood then appealed the chief's order to the commission, which in its conclusions of law determined:  "The Chief's application of the provisions of O.A.C. §1501:9-1-03(F)(2)(f)(i) where a well owner fails to comply with the annual filing obligation of O.A.C. §1501:9-1-03(F)(2)(a) is not unlawful, and indeed is mandated under the language of O.A.C. §1501:9-1-03(F)(2)(f)(i) [reciting that failure to provide information required for financial statements 'will result in an order by the chief requiring a surety bond, certificate of deposit, or cash bond in the amount of bond required']."  *Id.* at 10, conclusion 5.  The commission affirmed the chief's order, noting that application of the administrative code provision "is not unreasonable, particularly where the well owner has been informed of his annual filing obligation and has been provided with more than adequate time to come into compliance with this obligation."  *Id.* at 10, conclusion 6; *see also* conclusion 7.

{¶ 11} The common pleas court, in turn, upheld the commission's order as lawful and reasonable.  The court carefully reviewed the regulatory regime, noting the statutory mandate that " '[e]xcept as otherwise provided in this section, an owner of any well * * * shall execute and file with the division * * * a surety bond conditioned on compliance' with the specified environmental requirements."  Decision and Judgment Entry at 2, quoting R.C. 1509.07(B)(1).  As the common pleas court further recited, the statute does provide the

owner with an alternative: he or she " 'may deposit with the chief, instead of a surety bond, cash in an amount equal to the surety bond.' " *Id.*, quoting R.C. 1509.07(B)(2). And the chief of the division may allow (but not require) another alternative: " 'Instead of a surety bond, the chief may accept proof of financial responsibility consisting of a sworn financial statement showing a net financial worth within this state equal to twice the amount of the bond for which it substitutes * * * .' " *Id.* at 3, quoting R.C. 1509.07(B)(3). Declining to rewrite the statute to say that the chief "must" accept financial statements as proof of financial responsibility, *id.* at 4, the common pleas court concluded that "the Commission properly found that the Chief has discretion as to whether to accept a financial statement as proof of financial assurance." *Id.* at 4, 5.

{¶ 12} The common pleas court further noted that the Ohio Administrative Code provides that for financial statements "accepted in lieu of a surety bond * * * for non-domestic well owners for whom the chief has accepted a sworn financial statement prior to January 1, 1993," Ohio Admin.Code 1501:9-1-03(F), "[t]he annual obligation to file financial statements is set forth in Ohio Admin. Code 1501:9-1-03(F)(2)(a)." Decision and Judgment Entry at 6. "When the financial statement is not submitted, Ohio Admin.Code 1501:9-1-03(F)(2)(f)(i) authorizes the order requiring the filing of a surety bond, certificate of deposit, or cash bond." *Id.* The decision then proceeded to distinguish two earlier commission decisions that found the chief had "unreasonably refused to accept financial statements" that "appear to have been timely filed, but were rejected for no good cause." *Id.* at 7.

{¶ 13} Then observing that estoppel does not run against the state, the common pleas court found that any previous failure by the chief to enforce its rule with regard to Mr. Wood would "not preclude the Division from enforcing the rule [on what to do when a financial statement is not submitted] now." *Id.* at 8. The court also noted that Mr. Wood had provided no authority for the propositions that his court appeals in *Wood I* and *Wood II* should have prevented the commission from proceeding as it did, or that he thereby was prejudiced. *Id.* at 9. Requiring him to suspend well operations was appropriate under the relevant provisions of the statute and administrative code. *Id.* And Mr. Wood's request for subpoena of a particular witness came late and the commission's denial caused him no prejudice, the common pleas court held. *Id.* at 9-10.

{¶ 14} Now appealing to us the trial court's determination that the commission's order of October 29, 2018 affirming the chief's order dated July 7, 2015 was lawful and reasonable, Mr. Wood posits four assignments of error:

> [1.] The common pleas court erred when it stated that use of the word "may" in the statute means that the chief has the option or discretion to accept financial statements as proof of financial responsibility.
>
> [2.] The common pleas court erred when it failed to comply with the provisions of O.R.C. §1.49 in reaching its decision.
>
> [3.] The common pleas court erred when it found that the commission's order affirming Chief's Order 2015-345 is both lawful and reasonable.
>
> [4.] The common pleas court erred when it interpreted Ohio Administrative Code 1501:9-1-03(F)(2)(f)(i) as permitting the appellee to issue an order forever barring an owner from submitting a financial statement as proof of financial responsibility.

Appellant's Brief at 17, 26, 28, 31.

{¶ 15} As we had occasion to note in *Wood I*, the common pleas court reviews a commission order to determine whether it was "reasonable and lawful." 2017-Ohio-8718 at ¶ 12, quoting *Simmers v. N. Royalton*, 10th Dist. No. 15AP-900, 2016-Ohio-3036, ¶ 21 (further citations omitted). An order is not "reasonable" if it " 'is not in accordance with reason, or * * * has no factual foundation,' " and it is not "lawful" if it doesn't accord with the law. *Wood I* at ¶ 12, quoting *Johnson v. Kell*, 89 Ohio App.3d 623, 626 (10th Dist.1993). Our review, in turn, of the common pleas court decision " 'is more limited' "; we determine " 'only [whether] the trial court has abused its discretion' " through " 'perversity of will, passion, prejudice, partiality, or moral delinquency,' " absent which error we " 'must affirm the trial court's judgment.' " *Wood I* at ¶ 13, quoting *Gemini Energy, Inc. v. Div. of Mineral Resources Mgt.*, 10th Dist. No. 06AP-633, 2007-Ohio-5091, ¶ 9 (internal and other citations omitted). " 'On questions of law, however, the court of appeals' review is plenary.' " *Id.*

{¶ 16} Under each of his first two assignments of error, Mr. Wood argues that the common pleas court (and the commission before it) misconstrued the language of R.C. 1509.07(B)(3)—providing that "[i]nstead of a surety bond, the chief may accept proof of

financial responsibility consisting of a sworn financial statement * * *"—to vest some discretion in the chief as to whether to accept a financial statement in place of a surety bond. Mr. Wood cites to an early 1993 common pleas court decision that upheld a decision of the Oil and Gas Board of Review requiring the chief to accept one company's financial statement as sufficient proof of financial responsibility, and to another Board of Review decision of the same vintage and to the same effect, in suggesting that the statutory language can "be subject to various interpretations" and that "[i]t is sometimes necessary to give the words 'may' and 'shall' as used in a statue, meanings different than [sic] those given them in ordinary usage. *Dorrian v. Scioto Conservancy District*, 27 Ohio St.2d 102, 107 (1971)" (citations omitted). Appellant's Brief at 18-19, citing *Pepper Oil Co. v. Mason*, Franklin C.P. No. 92CVF08-6530 (February 24, 1993), and *Valley View Golf Club, Inc. v. Mason*, Appeal No. 437, Board of Oil and Gas Review (July 24, 1992).

{¶ 17} But *Dorrian* as cited by Mr. Wood hardly seems to support the proposition that "may" here means something other than it ordinarily does. There the Supreme Court of Ohio emphasized that "statutory use of the word 'may' is generally construed to make the provision in which it is contained optional, permissive, or discretionary, at least where there is nothing in the language or in the sense or policy of the provision to require an unusual interpretation." 27 Ohio St.2d at 107 (citations omitted, and adding that "[t]he word 'shall' is usually interpreted to make the provision in which it is contained mandatory"). Indeed, the court continued, "[o]rdinarily, the words 'shall' and 'may,' when used in statutes, are not used interchangeably or synonymously." *Id., citing State ex rel. Wendling Bros. Co. v. Bd. of Edn.*, 127 Ohio St. 336 (1933). In fact, the Supreme Court said, for "may" and "shall" to be construed "to have the meaning of the other," necessarily "the intention of the General Assembly that they shall be so construed must clearly appear from a general view of the statute under consideration." 27 Ohio St.2d at 108 (then holding that the statutes considered there showed "no clear intent of the General Assembly that the word 'may,' as contained therein, be construed as mandatory rather than permissive, its usual statutory meaning").

{¶ 18} Of course, the legislature can use words to have any meaning it defines them to have, either explicitly or as plainly infused by context, but when it seeks to use a word idiosyncratically, that "clear intent" itself will be expressed through statutory language. *See also, e.g., State ex rel. Turner v. Eberlin*, 117 Ohio St.3d 381, 2008-Ohio-1117, ¶ 14, quoting

*Morning View Care Ctr.-Fulton v. Dept. of Human Servs.*, 148 Ohio App.3d 518, 2002-Ohio-2878, ¶ 36 (10th Dist.)) (" 'The interpretation of statutes and administrative rules should follow the principle that neither is to be construed in any way other than as the words demand.' We must read undefined words and phrases in context and construe them in accordance with rules of grammar and common usage").

{¶ 19} And here, especially given the multiple and apparently considered uses of both "may" and "shall" within the statutory section, as noted in paragraph 3 above, we see no sign that the General Assembly employed those common and legally significant words indiscriminately. Again, as *Dorrian* and *Wendling Bros. Co.* confirm, they are not customarily used in statutes "interchangeably or synonymously." Moreover, as we have noted, " '[g]enerally in interpreting a statute or a contract, we presume that the use of different words indicates an intention that the words possess different meanings.' " *Dublin v. Friedman*, 10th Dist. No. 16AP-516, 2017-Ohio-9127, ¶ 43, quoting *Andover Village Retirement Community v. Cole*, 11th Dist. No. 2013-A-0057, 2014-Ohio-4983, ¶ 15; *see also, e.g., Tomaszczuk v. Whitaker*, 909 F.3d 159, 166 (6th Cir.2018) (invoking "the canon that different words in a statute have different meanings"). Here, the different uses of "may" and "shall" in R.C. 1509.07 could well be understood to imply that the legislature used those words not randomly, but to signify different meanings consistent with the ordinary distinction between the two.

{¶ 20} Arguing from his view of what the legislative policy underlying the provision should have been, against the conceded historical backdrop of environmental damage and public expense left by owners who had "drilled, produced and then abandoned" their unplugged wells, Appellant's Brief at 6, Mr. Wood contends that "if a financial statement provides proof of financial responsibility then the object sought to be attained by the statute is satisfied and the Chief may not reject it as proof of financial responsibility," *id.* at 25 (arguing further that the "object of O.R.C. §1509.07 is to provide evidence of an owner's financial ability to perform the tasks required to comply with the provisions of O.R.C. §1509 [sic]"); *see also id.* at 24 (purporting to "interpret[] the statute to give effect to the legislative intent").

{¶ 21} That a discerned goal of a statute may be attained through means different in some respect from those mechanisms actually specified in the statute would not permit us to rewrite the legislative text. But in light of the history that Mr. Wood recites, and even

taking his atextual mode of interpretation on its own terms, we do not understand the basis on which he urges that the legislature necessarily would have intended that the chief is required rather than permitted to accept financial statements meeting the designated criteria.

{¶ 22} That is, his argument based on environmental policies underlying the statute does not explain why "may" means "shall" in R.C. 1509.07(B)(3). A surety bond or cash deposit, as required under R.C. 1509.07(B)(1) and (2), provides assurance that land restoration and well plugging costs expended by the state may be recouped to the extent of the bond or deposit. Mr. Wood does not explain why the legislature might not have given preference to that sort of assurance, while still permitting the chief in his or her discretion to "accept proof of financial responsibility consisting of a sworn financial statement" meeting specified thresholds, *see* R.C. 1509.07(B)(3). Indeed, one might think it could be easier to collect on a surety bond or cash deposit than to levy against a financial statement. And as the five-Justice concurrence in the *Dorrian* case that Mr. Wood cites notes, reading "may" to provide discretion does not imply "an absolute discretion, regardless of proof of abuse thereof * * *. Discretion is always subject to abuse, and if there be proof of abuse, such discretion can be controlled and directed by an action in mandamus." 27 Ohio St.2d at 110 (Leach, O'Neill, Herbert, Duncan, and Cook, JJ, concurring) (emphasis omitted).

{¶ 23} Mr. Wood rehearses essentially the same arguments in support of his second assignment of error as those invoked for his first. Although we fail to discern the ambiguity that Mr. Wood posits as permitting interpretive exploration beyond the statutory text, especially in light of the Supreme Court's guidance in *Dorrian* that "may" means "may" absent "clearly" expressed legislative intention to the contrary, *see also, e.g., Smucker v. Levin*, 113 Ohio St.3d 337, 340 (2007) (" '[m]ay' is generally construed to render optional, permissive, or discretionary the provision in which it is embodied") (citation and internal quotation marks omitted), we need not reach a final conclusion on the first two assignments of error because our resolution of his third assignment determines the outcome of this case.

{¶ 24} Mr. Wood's *failure* to submit an annual financial statement even after the chief reminded him to do so triggered the mandatory (would Mr. Wood say discretionary?) authority of the chief to order a surety bond, certificate of deposit, or cash bond and to order the plugging of wells if such bond was not forthcoming. Mr. Wood on appeal does not challenge the validity of duly promulgated Ohio Admin.Code 1501:9-1-03(F)(2)(f)(i)

ordaining (emphasis added) that "[f]ailure of an owner to demonstrate financial responsibility as required [where sworn financial statements 'may be accepted in lieu of a surety bond' if submitted by a non-domestic well owner 'annually,' *see* 1501:9-1-03(F) preface and (F)(2)(a) and (F)(2)(b)] *will* result in an order by the chief requiring a surety bond, certificate of deposit, or cash bond * * * . If the order is not complied with, the owner will receive an order by the chief requiring the plugging of all wells of the owner."

{¶ 25} The record is plain that even after being extended additional time in which to submit his annual financial statement, Mr. Wood failed to do so. *See* Findings, Conclusions & Order of Commission at 2 (noting undisputed January 2015 reminder and allowance of additional 60 days from date of letter). Consequently, and pursuant to the regulation as consistent with statute, the chief's order issued. In such circumstance, a chief's order "will result" requiring the surety bond, c.d., or cash. And it did. It was that chief's order of July 7, 2015 that Mr. Wood appealed to the commission, and it is the commission's affirmance of that order (noting that such an order "indeed is mandated under the language of O.A.C. §1501:9-1-03(F)(2)(f)(i)," *id.* at 10, conclusion 5) that Mr. Wood appealed to the common pleas court and that the common pleas court upheld.

{¶ 26} Mr. Wood's third assignment of error contends that the common pleas court erred in finding the commission's order that affirmed the chief's order "both lawful and reasonable," Appellant's brief at 28, but beyond the *ipse dixit* that "[i]t is irrelevant whether the [chief's] order preceded the [financial] statement or the statement preceded the order," *id.* at 30, Mr. Wood offers no real argument as to why the chief's order of July 7, 2015 was wrong, or why the commission's affirmance of that order lacked a factual foundation or deviated from the law, or why the common pleas court's decision upholding that determination represents an abuse of discretion or misapprehension of the law. It is the chief's order that was at issue, and as of its issuance, Mr. Wood had not deigned to submit his annual financial statement.

{¶ 27} Mr. Wood's *ipse dixit* proposition is not only unjustified, it is incorrect. He identifies no error in the chief's order as of July 7, 2015, and he makes no showing as to why the commission acted unlawfully or unreasonably in affirming it. The commission was charged with reviewing the chief's order, as Mr. Wood had requested, not with assessing Mr. Wood's after-the-fact efforts (undertaken *not* to comply with the order, but belatedly to address the sustained failure that eventually had prompted the order). We are

constrained to observe, moreover, that even had the commission somehow been required to take Mr. Wood's July 17, 2015 filing into account in appraising the legality of the chief's July 7, 2015 order—a proposition, again, for which Mr. Wood offers no support in law or logic—Mr. Wood has advanced no reason that the commission could not lawfully have concluded that his sustained failure to submit the annual financial statement even after having been prodded to do so was a sufficient indicator of irresponsibility to warrant the requirement of a surety bond or cash deposit as contemplated by statute.

{¶ 28} Skirting these issues entirely, Mr. Wood in briefing his third assignment of error does not engage with or discuss Ohio Admin.Code 1501:9-1-03(F)(2)(f)(i) at all. This remarkable omission disposes of his case. He argues that the chief's order "is unreasonable because the Appellee issued the order for failure to file a new, updated financial statement, but the order cannot be satisfied by supplying a new, updated financial statement." Appellant's brief at 29. The plain text of the regulation, however, does not provide that such "failure" can be "satisfied" by submission of a post-order delinquent statement: the failure to which Mr. Wood adverts necessarily triggers an order "requiring a surety bond, certificate of deposit, or cash bond in the amount of bond required." Ohio Admin.Code 1501:9-1-03(F)(2)(f)(i). It is undisputed that Mr. Wood did not "satisfy" the chief's order in that (required) fashion.

{¶ 29} Instead of addressing the regulation dealing with the consequences of his *failure* to submit the financial statement, Mr. Wood here again urges the unpersuasive and in any event off-point argument that the statutory grant of authority to the chief to accept financial statements in lieu of surety bonds, R.C. 1509.07(B)(3) ("the chief may accept * * *"), functions instead as a preclusion of the chief's authority to require that the well owner "shall execute and file * * * a surety bond" or cash deposit, R.C. 1509.07(B)(1) and (2). Appellant's Brief at 29-31. Mr. Wood again invokes as support the commission's authority as affirmed in *Pepper Oil* and exercised also in *Valley View*. But while neither the common pleas court decision in *Pepper Oil* affirming the former Board of Oil and Gas Review nor the decision of that Board in *Valley View* binds the common pleas court here, or us, neither decision is inconsistent with the result here in any event.

{¶ 30} As the common pleas court noted, those two decisions are "inapposite" because they did *not* involve the failure to file financial statements that is directly at issue here. Decision and Judgment Entry at 7. More fundamentally still, those matters arose

before, if they did not precipitate, promulgation of all of Ohio Admin.Code 1501:9-1-03(F). *See* Ohio Admin.Code 1501:9-1-03 in the form effective from November 1, 1984 through its next amendment effective as of July 16, 1993 (ending with subsection (E)). That is, the regulation providing that failure, as here, to file an annual financial statement, *see* Ohio Admin.Code 1501:9-1-03(F)(2)(a), "will result in an order by the chief requiring a surety bond, certificate of deposit, or cash bond * * * * [that if] not complied with [will generate] an order by the chief requiring the plugging of all wells of the owner," Ohio Admin.Code 1501:9-1-03(F)(2)(f)(i), did not exist at the time those other matters were determined.

{¶ 31} The regulation exists now. We overrule Mr. Wood's third assignment of error. We therefore also overrule his first and second assignments of error, as moot.

{¶ 32} Mr. Wood bases his fourth assignment of error on the view that: "On [p]age [s]ix of its *Decision and Judgment Entry*, the Common Pleas Court argues that the failure of Appellant to respond to the letter from the Appellee requesting a new, updated financial statement, or to file a new statement annually, or every twelve months, permits the Appellee to issue an order that forever bars the Appellant from providing a financial statement as proof of financial responsibility." Appellants Brief at 31-32. Although such an interpretation of the law might be warranted, we find no such reading stated at page 6 (or anyplace else) of the common pleas court's decision. Rather, what the common pleas court said was that "[w]hen the financial statement is not submitted, Ohio Admin.Code 1501:9-1-03(F)(2)(f)(i) authorizes the order requiring the filing of a surety bond, certificate of deposit, or cash bond." We would substitute "mandates" for "authorizes," but that is an entirely correct recitation of what the administrative code subsection provides. We overrule Mr. Wood's fourth assignment of error, and because the decision appealed here affirms the chief's order from 2015, we are without authority to presume to rule on hypothetical orders not before us.

{¶ 33} We should note that Mr. Wood, at the very end of his brief in concluding his argument for the fourth assignment of error, finally acknowledges Ohio Admin.Code 1501:9-1-03(F)(2)(f)(i). Without adopting Mr. Wood's entire characterization of that provision, we do understand him ultimately to concede that an owner who has failed to submit a financial statement ("cannot" supply it, in his formulation) "must supply a cash or surety bond." Appellant's Brief at 33. For these circumstances and on the matter as presented to us, that is our general view of the law in any extent.

{¶ 34} Having overruled each of Mr. Wood's four assignments of error, we affirm the judgment of the common pleas court that affirmed the commission's decision upholding the chief's order of July 7, 2015.

*Judgment affirmed.*

KLATT, P.J., and BROWN, J., concur.

———————————